# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN — MILWAUKEE DIVISION

| | |
|---|---|
| DOES 1, 7, 8, and 9, individually;<br>DOES 2, 4, 5, and 6, individually<br>  and as taxpayers;<br>DOE 3, a minor,<br>  by DOE 3's next best friend, DOE 2;<br><br>        *Plaintiffs*,<br><br>    v.<br><br>ELMBROOK JOINT COMMON SCHOOL<br>DISTRICT NO. 21,<br><br>       *Defendant*. | Case No. _____ |

## COMPLAINT

### Introduction

1. "Everyone knows that in our society and in our culture high school graduation is one of life's most significant occasions." *Lee v. Weisman*, 505 U.S. 577, 595 (1992). For students of two public high schools in Brookfield, Wisconsin, both located in Elmbrook Joint Common School District No. 21 ("the Elmbrook School District" or "the District"), this significant life event takes place in the sanctuary of a Christian church. Brookfield Central High School ("Brookfield Central") has held its annual commencement exercises at Elmbrook Church ("the Church") since 2000, and Brookfield East High School ("Brookfield East") has done so since 2002. During these events, school officials administer the ceremony, speakers deliver their orations, and students receive their diplomas on a dais beneath an immense Christian cross. Bibles and hymnal books in the pews where graduating students and their family members sit, as well as religious banners and symbols that graduates and guests must pass by to enter the

sanctuary for the ceremonies, further contribute to a religious atmosphere at these public-school graduations.

2.  The Establishment Clause of the First Amendment to the United States Constitution prohibits public high schools from holding graduation ceremonies at houses of worship, for "[t]he Constitution forbids the State to exact religious conformity from a student as the price of attending her own high school graduation." *Id.* Yet the District has rejected multiple requests from concerned parents and from civil-liberties organizations to move the graduation ceremonies to a secular location. This year, once again, both Brookfield East and Brookfield Central plan to hold their commencements at Elmbrook Church — on June 6 and 7, 2009, respectively.

3.  Accordingly, a graduating senior, other students, and parents of students at Brookfield East and Central who plan to attend these schools' graduation ceremonies this year or in future years, or have done so at Elmbrook Church in past years, bring this action to enforce the First Amendment's Establishment Clause. The plaintiffs seek a declaratory judgment that the District's practice of holding public high-school graduation ceremonies in a house of worship is unconstitutional; a preliminary and permanent injunction requiring the District to move commencement exercises for this year and future years to a secular venue; and compensatory damages on behalf of the plaintiff students and parents who have already been coerced to attend graduation ceremonies at the Church.

**Jurisdiction and Venue**

4.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

5.  The Court has the authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2

6.  Venue is proper in this Court under 28 U.S.C. §§ 1391(b), as the plaintiffs and the defendant all reside or are situated within this district.

## Parties

### *The Elmbrook School District*

7.  Defendant Elmbrook School District is a municipal entity that, among other powers, may levy taxes and issue bonds; build, acquire, lease, and sell real property and structures; and bring and defend lawsuits.

8.  The District, located in the western suburbs of Milwaukee, Wisconsin, embraces a religiously, culturally, and ethnically diverse student population of more than 7,500 students.

9.  Brookfield Central High School and Brookfield East High School are the two main high schools of the District.

10.  The District's third high school, Fairview South School, is a specialty school for children who are cognitively disabled.

11.  Fairview South does not hold graduations at Elmbrook Church, and that school's activities are not at issue in this case.

12.  The Elmbrook Board of Education has delegated to the District's Superintendent "[t]he administration of the school system in all of its aspects," "the authority to make rules, regulations, and practice statements to govern routine matters of District operation," and "control and supervision of all school buildings, grounds, and equipment."  Elmbrook School District Board of Education Policy 2111 (Jan. 2005).

13.  The Board has authorized the Superintendent to delegate any of his responsibilities and duties to his subordinates, including school principals.  *Id.*

3

14. The school principals are "responsible for the planning, operation and evaluation of the instructional and extra-curricular programs" in their schools. Elmbrook School District Board of Education Policy 2302 (Nov. 2008).

15. Matt Gibson has served as Superintendent of the District since approximately 1994.

### Doe 1

16. Plaintiff Doe 1 is a senior at one of the Elmbrook School District high schools that plans to hold its graduation at Elmbrook Church in June 2009. Doe 1 has reached the age of majority. Doe 1's elder sibling graduated from the same high school less than four years ago, and that sibling's graduation was also held at Elmbrook Church. Doe 1 subscribes to a religious faith different from Christianity, and Doe 1 does not subscribe to the religious beliefs of Elmbrook Church. Doe 1 did not want to attend the graduation of Doe 1's elder sibling, because the church location of the graduation made Doe 1 uncomfortable. Doe 1's family asked Doe 1 to attend Doe 1's sibling's graduation, however. Doe 1 was thus forced to choose between attending a graduation ceremony in a Christian church, and missing Doe 1's sibling's graduation. Doe 1 decided to attend, in order to support Doe 1's sibling. Doe 1 thereby was coerced to attend a ceremony at a Christian house of worship.

17. Attending Doe 1's sibling's graduation ceremony at Elmbrook Church made Doe 1 uncomfortable and upset, and the religious venue of the ceremony offended Doe 1, for many reasons, including those stated below. Throughout the graduation, Doe 1 had to look at the towering cross that is over the dais where students receive their diplomas. Photographs from that graduation include the cross, and serve as a permanent reminder of the discomfort that the ceremony's location caused. Doe 1 observed some members of the audience genuflect as they

4

entered their seats, due to the religious nature of the venue. There were Bibles and hymnals in the pews where Doe 1 and other attendees sat. Doe 1 observed Christian symbols and signs on the outside of Elmbrook Church, in the lobby of the Church, and in the passageways leading to the sanctuary where the graduation ceremony was held. Members of the Church, instead of school officials, handed out materials for the ceremony. For all these reasons, the graduation occurred in a religious, Christian atmosphere. Adding to Doe 1's discomfort was Doe 1's understanding that the Church teaches that adherents of Doe 1's religion will go to hell because they do not believe what the Church believes.

18. In addition to feeling coerced into attending a graduation ceremony in a religious atmosphere, Doe 1 felt that the selection of the Church as the venue for the graduation sent a message that the Elmbrook School District favors and endorses the Christian religion. This perception was enhanced by Doe 1's understanding that the Superintendent of the District, one of the principals of the District high schools, and a number of other members of the District administration are members of the Church, and by other experiences Doe 1 has had as a student that have evinced to Doe 1 that Doe 1's school is dominated by Christian influences. The selection of the Church for the graduation made Doe 1 feel that Doe 1 is an outsider, a disfavored religious minority in the school community. For these reasons, the holding of the graduation of Doe 1's elder sibling at Elmbrook Church injured Doe 1.

19. Doe 1 will graduate in June 2009, and Doe 1's graduation ceremony is scheduled to take place at Elmbrook Church. Doe 1 objects to and is offended by the prospect of attending graduation at the Church for the same reasons that Doe 1 was uncomfortable at and objected to attending the graduation of Doe 1's elder sibling at the Church. But Doe 1's discomfort and

5

objections are now amplified because this graduation will be Doe 1's own. Doe 1 has been put to the choice of attending a graduation ceremony at a Christian house of worship with a religious environment, or missing Doe 1's own graduation. Doe 1's personal preference would be to skip the graduation because of its location at the Church, but Doe 1 plans to go, notwithstanding that location, in order to not disappoint Doe 1's family. If the graduation is not moved out of the Church, Doe 1 will thus again be coerced to attend graduation in a religious, Christian environment. Doe 1 will therefore suffer imminent, irreparable harm if the District is not enjoined to move Doe 1's graduation ceremony to a secular location.

20. Doe 1 has younger siblings who plan to graduate from Doe 1's high school in future years. Doe 1 would like to attend their graduations. If the District is not enjoined from holding graduations at Elmbrook Church, Doe 1 will suffer further irreparable harm, because Doe 1 will have to choose between missing Doe 1's siblings' graduations and attending graduation ceremonies in a house of worship of a faith different from Doe 1's, and Doe 1 will again face coercion to attend a graduation ceremony in a religious environment.

### *Doe 2*

21. Plaintiff Doe 2 is a parent of Doe 1, of other children attending schools in the District — including plaintiff Doe 3, a minor — and of an older child who graduated from a District high school in Elmbrook Church less than four years ago. Doe 2 and Doe 3 attended that older child's graduation. Doe 2 and Doe 3 subscribe to a religious faith different from Christianity. Doe 2 and Doe 3 do not subscribe to the religious beliefs of Elmbrook Church. The cross is not a symbol of Doe 2's and Doe 3's religion.

22. Doe 2 felt uncomfortable, unwelcome, angry, and upset at the older child's

6

graduation ceremony, watching the child graduate underneath the towering cross in the sanctuary where the ceremony was held. Those feelings were amplified by Doe 2's knowledge of the teachings of Elmbrook Church, which Doe 2 understands condemn persons who do not subscribe to the Church's religious doctrines or who engage in conduct proscribed by those doctrines. Doe 2 felt that Doe 2 had been coerced to enter a house of worship of a faith different from Doe 2's own in order to watch Doe 2's child graduate. The mental anguish Doe 2 suffered as a result of that graduation being held in Elmbrook Church continued for some time after the ceremony had concluded. Doe 2 further perceives that the District has been favoring and endorsing the Church's religious beliefs by holding its graduations in the Church, and this perception is reinforced by Doe 2's understanding that the District's superintendent, as well as several members of the District's Board of Education, are members of the Church. Doe 2 further has been offended by the District's church-graduation practice because Doe 2 believes that it is an inappropriate mixing of church and state. In addition, by coercing Doe 2 to take Doe 3 into a religious environment of a faith different from theirs in order to attend the graduation of Doe 2's older child, the District interfered with Doe 2's ability to direct and control the religious upbringing of Doe 3. For these reasons, the holding of the graduation ceremony of Doe 2's older child in Elmbrook Church injured Doe 2.

23. If the District is not enjoined from holding Doe 1's graduation at the Church, Doe 2 will again feel uncomfortable, unwelcome, and upset at the graduation, for the same reasons that Doe 2 had those feelings at the graduation of Doe 2's older child. Doe 2 will again be coerced to go to the Church in order to see one of Doe 2's children graduate. Doe 2 will also again be faced with coercive pressure to take Doe 3 into an environment of a faith different from Doe 2's and

7

Doe 3's, and Doe 2 is thereby threatened with further interference by the District with Doe 2's ability to direct and control the religious upbringing of Doe 3. Doe 2 will therefore suffer imminent, irreparable harm unless the District is enjoined to move Doe 1's graduation ceremony to a secular location. Doe 2 will further suffer similar irreparable harm in future years, when Doe 2's younger children graduate, unless the District's practice of holding graduations at the Church is ended.

24. Doe 2 pays property taxes to the District and has done so for at least the last four years. Doe 2 understands that the District has regularly used property-tax payments from District taxpayers to pay part of the fees Elmbrook Church charges for use of the Church for graduations, and that the District plans to do so again this year. Doe 2 objects to the use of Doe 2's property-tax payments to support graduations at Elmbrook Church, because such use of Doe 2's tax payments supports the propagation of religious doctrines to which Doe 2 does not subscribe and the holding of graduation ceremonies in a religious environment. If the District's practice of holding graduation ceremonies at Elmbrook Church is not enjoined, Doe 2 will suffer irreparable harm from such continued use of Doe 2's property-tax payments.

### Doe 3

25. In addition to suing on Doe 2's own behalf, Doe 2 sues as next best friend of Doe 2's minor child, plaintiff Doe 3, a student in a District school. When Doe 3 attended the graduation of Doe 2's older child at Elmbrook Church, Doe 3 felt uncomfortable because the graduation occurred in a religious environment of a faith different from Doe 3's. If Doe 1's graduation is not moved out of the Church, Doe 3 will experience similar discomfort at Doe 1's graduation. Doe 3 also objects to the holding of District graduations at Elmbrook Church because this

8

practice violates the separation of church and state.  For these reasons, Doe 3 was injured by the holding of Doe 2's elder child's graduation at the Church, and will suffer imminent and irreparable harm unless the District is enjoined to move Doe 1's graduation ceremony to a secular location.  If the District's practice of holding graduations in a house of worship is allowed to continue, Doe 3 will further suffer similar irreparable harm in future years, when Doe 2's younger children, including Doe 3, graduate.  When Doe 3 graduates, Doe 3 will be put to the choice of entering an uncomfortable environment of a faith different from Doe 3's, or missing Doe 3's own graduation.

### *Doe 4*

26.  Plaintiff Doe 4 resides in the Elmbrook School District.  Doe 4 is the parent of minor children who attend schools in the District and who will enter one of the two Brookfield high schools in the future.  Doe 4 is a humanist and does not subscribe to the religious beliefs of Elmbrook Church.  Doe 4 opposes and objects to the use of any religious facility for governmental events.  Doe 4 would be uncomfortable attending an event such as graduation — an event that is not supposed to have a religious purpose and is not supposed to be infused with religion — in a religious environment such as Elmbrook Church.  Further, Doe 4 believes that in selecting a Christian church as a graduation venue, the District has aligned itself with a majority religion in a way that ignores, and is disrespectful of, minority religious viewpoints like Doe 4's own.  If the District's practice of conducting its high-school graduation ceremonies at a house of worship is not enjoined, Doe 4 will be harmed by being forced to choose between entering a Christian house of worship and submitting to an unwanted religious environment, on the one hand, and forgoing attendance at Doe 4's children's graduations, on the other.  As a parent, Doe

9

4 will further be harmed by being compelled to choose whether to allow the District to interfere with the religious upbringing of Doe 4's children, or to deny Doe 4's children the opportunity to participate in their own or their siblings' graduations.

27. Doe 4 pays property taxes to the District and has done so for at least the last several years. Doe 4 has been informed that the District has used property-tax payments from District taxpayers to pay part of the fees Elmbrook Church charges for use of the Church for graduations, and that the District plans to do so again this year. Doe 4 objects to such use of Doe 4's tax payments. Doe 4 opposes the use of Doe 4's tax payments to advance any religion or subsidize any religious organization. Doe 4 objects to the use of Doe 4's property-tax payments to support a graduation ceremony in a religious environment, to support coercion of students and family members of other religions or of no religion to attend graduations in such an environment, and to aid the propagation of the religious views of the Church. If the District's practice of holding graduation ceremonies at Elmbrook Church is not enjoined, Doe 4 will suffer irreparable harm from such continued use of Doe 4's property-tax payments.

### Doe 5

28. Plaintiffs Does 5 and 6 reside in the Elmbrook School District and are the parents of Does 7 and 8, who have attained the age of majority. Doe 7 graduated from one of the two Brookfield high schools on June 4, 2005, in a ceremony held at Elmbrook Church and attended (in whole or in part) by Does 5, 6, and 8. Doe 8 graduated from that high school in Elmbrook Church in 2002. Although Does 5 through 8 all attended, in whole or in part, both the 2002 and 2005 graduations, they seek damages only in connection with the 2005 graduation, because the statute of limitations has passed with respect to the 2002 graduation.

10

29. Plaintiff Doe 5 is an atheist and subscribes to a strictly rational, scientific view of the world. Doe 5 felt extremely uncomfortable, unwelcome, and like an outsider when Doe 5 went to the Church for Doe 8's graduation ceremony in 2002 and Doe 7's graduation ceremony in 2005. Doe 5 understands that the Church teaches that non-Christians like Doe 5 and the members of Doe 5's family will suffer torment in hell for all eternity because they do not subscribe to the religious beliefs of the Church. The large cross on display in the Church's sanctuary, various other crosses on display throughout the Church, and the other elements of the Church's religious environment symbolize those doctrines to Doe 5. The cross in the sanctuary continually imparted the Church's religious views to Doe 5 when Doe 5 was there.

30. Doe 5's feelings of discomfort in 2002 had been so great that Doe 5 missed almost all of the 2005 graduation ceremony. Doe 5 waited in a public parking lot about one-half mile from the Church for Doe 6 to notify Doe 5 by cell phone that Doe 7 would soon walk up to the dais to receive Doe 7's diploma. Doe 5 then drove to the Church, parked, rushed into the sanctuary right before Doe 7 was handed Doe 7's diploma, watched Doe 7 receive Doe 7's diploma with a towering cross in the background, and promptly left again. The holding of the ceremony at Elmbrook Church completely ruined Doe 5's ability to enjoy the once-in-a-lifetime experience of watching Doe 7 graduate. Doe 5 was very angry and greatly upset, and suffered substantial emotional pain and mental distress, as a result of Doe 7's graduation ceremony being held at a church, and these feelings remained with Doe 5 for a long time.

31. Doe 5 felt that Doe 5 had been forced to go to church in order to see Doe 7 graduate. The District forced Doe 5 to choose between entering a house of worship that preaches that Doe 5 will suffer in hell for all eternity, on the one hand, and missing the high-school commencement

11

of Doe 5's child, Doe 7, on the other. Doe 5 also perceived that the Elmbrook School District has endorsed the Church's religious beliefs and dogmas by holding the graduations in the Church, a perception that is reinforced by Doe 5's understanding that the District's Superintendent is a member of the Church. Doe 5 further believes that maintaining separation between church and state is essential to harmony in American society, and that by metaphorically embracing Elmbrook Church's religious viewpoint, the District has threatened that harmony in Doe 5's community. In the above-described ways, Doe 5 suffered injury as a result of Doe 7's graduation being held at Elmbrook Church.

32. Doe 5 pays property taxes to the Elmbrook School District and has done so for at least the last seven years. Doe 5 understands that the District has used property-tax payments from District taxpayers to pay part of the fees Elmbrook Church charges for use of the Church for graduations, and Doe 5 understands that the District plans to do so again this year. Doe 5 objects to the use of Doe 5's property-tax payments to support graduations at Elmbrook Church, because such use of Doe 5's tax payments supports graduation ceremonies in a religious environment, and because such use supports the propagation of religious views to which Doe 5 does not subscribe — including the teaching that non-Christians like Doe 5 will spend all of eternity in hell. If the District's practice of holding graduation ceremonies at Elmbrook Church is not enjoined, Doe 5 will suffer irreparable harm from such continued use of Doe 5's property-tax payments.

12

### *Doe 6*

33.  Plaintiff Doe 6 attended Doe 7's graduation in Elmbrook Church in 2005.  Doe 6 is an atheist.  Doe 6 felt uncomfortable, unwelcome, and like an outsider at the graduation ceremony, because of the graduation venue's inescapable religious environment, including the large cross that was directly in Doe 6's line of sight when Doe 6 watched Doe 7 walk across the stage to receive Doe 7's diploma and throughout the rest of the ceremony; because of the Bibles and hymnals in the pews where Doe 6 sat; and because of the various religious items that were on display in the lobby and passageways Doe 6 had to pass through in order to enter the sanctuary for the ceremony.  Doe 6 felt that Doe 6 had been forced to go to church in order to see Doe 7 graduate.  Doe 6 also perceived that the Elmbrook School District endorsed Christianity by holding the graduations in the Church.  Doe 6 further believes that the District violated the separation of church and state by selecting the Church for the graduations.  For these reasons, the holding of Doe 7's graduation ceremony in Elmbrook Church offended and injured Doe 6.

34.  Doe 6 pays property taxes to the Elmbrook School District and has done so for at least the last seven years.  Doe 6 understands that the District has used property-tax payments from District taxpayers to pay part of the fees Elmbrook Church charges for use of the Church for graduations, and Doe 6 understands that the District plans to do so again this year.  Doe 6 objects to the use of Doe 6's property-tax payments to support graduations at Elmbrook Church, because such use of Doe 6's tax payments supports coercion of students and their families to attend a church for a once-in-a-lifetime school event, and because such use supports propagation of religious beliefs to which Doe 6 does not subscribe.  If the District's practice of holding graduation ceremonies at Elmbrook Church is not enjoined, Doe 6 will suffer irreparable harm

13

from such continued use of Doe 6's property-tax payments.

### *Doe 7*

35.  Plaintiff Doe 7 is a 2005 graduate of one of the two Brookfield high schools.  Doe 7 attended Doe 7's graduation ceremony in the sanctuary of Elmbrook Church.  Doe 7 is an atheist and does not subscribe to the religious beliefs of the Church.  Doe 7 felt uncomfortable, offended, unwelcome, upset, and angry at the ceremony, including because Doe 7 had to keep looking at the immense cross behind the stage upon which the ceremony occurred in order to see the events there; because Doe 7 had to sit in pews with Bibles in them; and because there were religious displays and symbols in the Church lobby and passageways that Doe 7 had to walk through to get to the sanctuary.  Throughout the graduation, Doe 7 felt that Doe 7 was in a religious environment, and that the Church was imposing its beliefs upon Doe 7.  Doe 7 also felt unwelcome, uncomfortable, and offended at the graduation ceremony because Doe 7 understood that the Church teaches that non-Christians like Doe 7 will spend all eternity in hell for failing to subscribe to the tenets of the Church.  In addition, Doe 7 could not enjoy Doe 7's graduation ceremony because Doe 7 knew that the rest of Doe 7's family (Does 5, 6, and 8) were uncomfortable in the Church too, and that Doe 5 was so uncomfortable that Doe 5 was unable to attend most of the ceremony.

36.  Doe 7 felt that Doe 7 had been forced to go to church as the price of attending Doe 7's high-school graduation.  While Doe 7 did not want to graduate in a church, Doe 7 did not view missing Doe 7's own graduation as a genuine option.  Doe 7 felt entitled to participate alongside Doe 7's peers and friends in the momentous rite of passage of high-school graduation, and Doe 7 felt that not attending would amount to submission to religious segregation.  Doe 7

14

also perceived that the District had favored and endorsed Christianity by holding the graduation at Elmbrook Church, and this perception was reinforced by Doe 7's understanding that a number of members of the District's Board of Education are members of the Church. Doe 7 was further offended by the District's practice of holding high-school commencements at the Church because this practice violates the separation of church and state.

37. In Fall 2004, Doe 7's school conducted a vote among the members of Doe 7's senior class on where to have the class's graduation. In conjunction with the vote, Doe 7 spoke out against holding the graduation at the Church. Doe 7's classmates responded by putting down and shaming Doe 7. As a result, Doe 7 felt singled out, angry, and sad, like less of a person.

38. Due to both the graduation in the Church and the vote that preceded it, Doe 7 felt discriminated against based on Doe 7's religious views, and learned what it is like to experience discrimination. The feelings of offense and anguish that Doe 7 suffered as a result of the graduation and the vote stayed with Doe 7 for a long time after the graduation occurred. For the foregoing reasons, the District injured Doe 7 by locating Doe 7's graduation in the Church and by holding a vote on whether to do so.

### Doe 8

39. Plaintiff Doe 8 is a 2002 graduate of one of the District's high schools. Doe 8 attended the graduation of Doe 8's sibling Doe 7 in Elmbrook Church in 2005. Doe 8 is an atheist and believes that religious faith, or the lack thereof, is a private matter which each individual must explore for himself or herself. Doe 8 experienced mental stress and intense discomfort as a result of the religious environment in Elmbrook Church. Throughout the ceremony, Doe 8 saw the large cross behind the stage where the ceremony occurred. In the

15

Church lobby, and the passageways that led from the lobby to the sanctuary, Doe 8 saw other crosses and many religious advertisements and pamphlets. Doe 8 felt that the Church was attempting to proselytize Doe 8 through its religious displays and materials. Doe 8 felt unwelcome during the ceremony, like an outsider who did not belong.

40. Doe 8 felt coerced to enter Elmbrook Church in 2005 in order to attend Doe 7's graduation. Doe 8 further perceived that the District sent a message of favoritism and endorsement of Christianity, and a message of disrespect for the beliefs of non-Christians like Doe 8, by holding Doe 7's graduation in Elmbrook Church. This perception was amplified by Doe 8's understanding that the District had many secular options for a graduation venue, and by Doe 8's understanding that most of the decision-makers in the District were Christians. For the foregoing reasons, the District injured Doe 8 by holding Doe 7's graduation in Elmbrook Church.

### Doe 9

41. Plaintiff Doe 9 is a parent of minor children who attend schools in the Elmbrook School District and who will both enter one of the two Brookfield high schools over the next few years. Doe 9 is an atheist. Doe 9 chooses not to be involved in religion. Doe 9 would never enter Elmbrook Church of Doe 9's own volition, because Doe 9 does not subscribe to and is very offended by the Church's religious teachings, which Doe 9 understands to be misogynist and anti-gay. If the District's practice of holding graduations at the Church is not enjoined, Doe 9 will be forced to go to the Church in order to attend Doe 9's children's graduations. Doe 9 will likewise be forced to take Doe 9's family to the Church, even though Doe 9 does not want to subject Doe 9's children to any religion. Thus, if the District's practice is not enjoined, it will

16

also interfere with Doe 9's ability to direct the upbringing of Doe 9's children with respect to religion.

42. Doe 9 further objects to the District's use of the Church for graduations because it communicates a message that the District favors Christianity over other belief systems. In addition, Doe 9 objects because Doe 9 believes that the District's practice violates the separation of church and state, including by unnecessarily entangling the public schools with religion, and by coercively exposing numerous public-school students to the Church's religious messages.

*****

43. Plaintiffs bring this action under pseudonyms to protect themselves, and where applicable, their minor children, from social ostracism, economic injury, governmental retaliation, and even physical harm. Plaintiffs who bring Establishment Clause challenges to religious activities in public schools routinely face such risks, and the plaintiffs here anticipate that they would face one or more of these dangers if their identities were made public.

### General Allegations

### *Graduations at Elmbrook Church*

44. Since the beginning of this decade, Brookfield Central High School and Brookfield East High School have held their graduation ceremonies at Elmbrook Church.

45. Elmbrook Church is a Christian church located in Brookfield, Wisconsin.

### *The Sanctuary and the Cross*

46. The graduation ceremonies take place in the Church's sanctuary.

47. A wide dais spans the front of the sanctuary and serves as the focal point of the ceremonies.

48.  Speakers stand at a podium on this dais to deliver their remarks.

49.  Persons with official roles in the ceremony sit on the dais.

50.  Graduates proceed across the dais to receive their diplomas.

51.  Directly behind and above the graduates, towering over the activities on the dais, an immense wooden Christian cross is affixed to the wall.

52.  The cross is approximately fifteen to twenty feet tall and approximately seven to ten feet wide.

53.  The cross is a symbol of Elmbrook Church members' Christian faith.

54.  The cross appears directly in attendees' line of sight when they watch events upon the dais.

55.  Most photographs taken at District graduation ceremonies have the cross in them.

56.  Two very large video screens showing closeups of graduation speakers and other events on the dais hang next to the cross, one on each side.

57.  It is feasible to cover the cross.

58.  The cross was in fact veiled by a custodian the first time that the District used the Church for a graduation, but not on subsequent occasions.

59.  The Church has made a policy decision that the cross will not be covered during future graduation ceremonies.

60.  The Church's senior associate pastor has explained that the Church wants to share its facilities without compromising its identity.

61.  Elmbrook Church teaches that persons who do not subscribe to the Church's Christian beliefs will suffer torment in hell for all eternity.

18

*The Pews Where Graduates and Guests Sit*

62.  During the graduation ceremonies, graduating students and their guests sit in the Church's pews.

63.  Some guests of graduates have genuflected as they entered their seats, due to the religious nature of the venue.

64.  Bibles, hymnal books, and tithe envelopes remain in all the pews, right in front of each student and family member.

65.  Some members of the audience have read or leafed through the Bibles or hymnals in the course of the District's ceremonies.

*Other Religious Aspects of the Church's Interior*

66.  Graduates and their guests must walk through the Church's lobby and some passageways to get to the sanctuary for the graduation ceremonies.

67.  The graduates and guests also congregate in the lobby after the ceremony.

68.  Religious banners, symbols, and posters, as well as other religious items, are on display in that lobby and those passageways during graduation ceremonies.

69.  Religious phrases that have appeared on the banners include "Leading Children to a Transforming Life in Christ," "Jesus," "Lord of Lords," "Knowing the Lord of Jubilee," and "Sabbath Forgiveness."

70.  During one graduation, a "Brookfield East High School" banner appeared on the wall opposite from these signs.

71.  Brookfield Central and Brookfield East also hang banners symbolic of their schools in the Church's sanctuary during graduation ceremonies.

19

72.   Other religious items that graduates have had to pass by on their way into the Church's sanctuary have included crosses, religious paintings, quotations from the Bible, portraits of Jesus, a cart labeled "PRAYER," and a poster advertising a "Summer Godsquad" for middle-school children.

73.   During the graduation ceremonies, religious literature has been displayed and available to graduates and their families at an information booth staffed by Church members and at unattended tables and wallboards throughout the Church lobby.

74.   The lobby also contains computer screens that display religious messages.

75.   During at least one graduation, Church members passed out religious literature in the lobby.

76.   Members of the Church, instead of school employees, have also handed out graduation materials at ceremonies.

### The Church's Exterior

77.   An enormous cross forms part of the Church building's roof structure, suggesting a modern architectural interpretation of the traditional church steeple.

78.   This cross is easily seen from some of the Church's parking areas and access roads and, further beyond, from a busy intersection near the Church.

79.   There are large signs emblazoned with crosses at that intersection and at each of the two driveway entrances to the Church complex.

80.   Likewise, at every doorway into the Church, a large sign emblazoned with a cross identifies the areas accessible through that entrance.

81.   Thus, one cannot even enter the Church without passing by at least two large cross-

20

emblazoned signs.

82. In addition, the roads in the Church's parking lot have street signs with the Biblical names "Agape" and "Barnabas."

### *Use of Property Taxes to Pay For Church Graduations*

83. For each graduation ceremony held at Elmbrook Church, the District has paid the Church fees to use the Church.

84. In recent years, the fees have been approximately $2,000 to $2,200 for each school, and the District expects to pay similar sums for this year's graduations.

85. Each year, while funds raised by the senior class have covered part of the Church's fees, the District has paid another part of the fees with funds obtained from property taxes.

86. Local property taxes provide the vast majority — approximately 84 percent in the current fiscal year — of District revenues.

### *History of the District's Church Graduations*

#### *Inception of the Church-Graduation Practice*

87. Prior to 2000, both Brookfield Central and Brookfield East held their commencement ceremonies in their gymnasiums every year.

88. In September 1999, seeking a graduation location with more amenities, Brookfield Central's senior class officers wrote to District Superintendent Matt Gibson to request that the 2000 ceremony be moved to Elmbrook Church.

89. Brookfield Central's principal adopted this proposal.

90. In 2001, a proposal was made to move Brookfield East's graduations to the Church, too.

21

91. Brookfield East's principal wrote in a school newsletter: "My experience to this point is that there are several people interested in the amenities of a facility like the Elmbrook Church; however, there are also many people who would be opposed to a site other than the school, especially if it involved a move to a religious facility."

92. Another school newsletter stated, "One of the first questions some people had was whether a church setting was considered appropriate for a public school graduation ceremony."

93. But Brookfield East's principal eventually adopted the proposal, after a majority of seniors voted for it.

94. Since 2000 in the case of Brookfield Central, and 2002 in the case of Brookfield East, the schools' graduations have been held at Elmbrook Church every year.

95. Rehearsals for the graduations also have annually taken place at the Church.

96. And, in at least some years, at least one of the high schools has held its Senior Honors Night in the small chapel of Elmbrook Church.

*Student Votes and Alternative Sites*

97. During at least most years in the first half of this decade, Brookfield Central and Brookfield East officials organized advisory votes by their senior classes on where to hold their graduations.

98. School officials began their site-selection processes by compiling lists of seven to ten possible commencement sites.

99. The sites placed on these lists over the years have included Elmbrook Church, the schools' gymnasiums and sports fields, the Sharon Lynne Wilson Center for the Arts, Carroll University's Shattuck Auditorium, Milwaukee Area Technical College's Cooley Auditorium, the

22

Pabst Theater, the Waukesha County Exposition Center, the U.S. Cellular Arena, the Midwest Airlines Center, and Wisconsin Lutheran College.

100.  All of these venues except for Elmbrook Church and the Lutheran college are entirely secular in nature.

101.  The Lutheran college informed the District that, unlike Elmbrook Church, it was willing to cover the cross in its auditorium for graduation ceremonies.

102.  The Cooley Auditorium and the U.S. Cellular Arena are frequently used by other schools for their graduations.

103.  In at least most of the years in which student votes were held, instead of placing all of these facilities on student ballots, school officials and senior class officers narrowed down the choices and allowed students to vote on only two or three options, one of which was always Elmbrook Church.

104.  In some votes, including the initial vote at Brookfield East, students were allowed to choose between only the Church and their school gym.

105.  School officials provided students with information about the costs and characteristics of each facility.

106.  In doing so, school officials emphasized various amenities of the Church and made it appear to be much more desirable than the other choices students were given.

107.  The vast majority of the students in the District are Christians.

108.  Students who spoke out against using the Church for graduations in connection with the votes were treated negatively by their peers in response.

109.  Not surprisingly, in each year for which data is available, clear majorities of the

23

students voted for the Church.

110.  Significant minorities, however — often approximately a fifth to a tenth of the senior class — voted for secular options.

### Church Graduations Established As a Custom of the District

111.  Starting in or about 2005, Brookfield East and Brookfield Central stopped holding the advisory student votes.

112.  Instead, over the last few years, Brookfield East and Brookfield Central officials have simply booked the Church, discussing this choice with senior class officers only months later, if at all.

113.  Likewise, during many years in the first half of this decade, school officials had held meetings for interested students and parents concerning potential graduation sites, but such meetings stopped in or about 2005 or 2006.

114.  Graduations at Elmbrook Church have thus become an entrenched custom and practice of the Elmbrook School District.

115.  District Superintendent Gibson delegated to the principals of Brookfield Central and Brookfield East the authority to decide where to hold the schools' graduations.

116.  Superintendent Gibson has known of, supported, and ratified the principals' annual decisions to hold graduation exercises at the Church since the practice began.

117.  Similarly, throughout the time that graduations have been held at Elmbrook Church, the Elmbrook School District Board of Education has been aware of the location of the graduations.

118.  The Board has taken no action to stop the District's church-graduation practice, and

24

its leadership has approved the practice and authorized Superintendent Gibson to deal with the matter as he sees fit.

119.  Superintendent Gibson, some members of the Board, at least one of the District's high-school principals, and some other personnel in the District's administration are members of Elmbrook Church.

### Complaints About the District's Church Graduations

120.  Superintendent Gibson and the Board have allowed the District's church graduations to continue despite receiving and being aware of many complaints and legal objections from parents, community members, and civil-liberties groups about the practice.

### Complaints From Parents and Community Members

121.  For example, in October 2001, a senior parent asked that the senior's graduation not be held in Elmbrook Church, explaining that the "Church actively promotes the idea that people like me . . . are going to . . . a Hell-like place undergoing endless torments" and that the parent did not want to expose the senior to "this intensely hateful and violent position."

122.  In August 2002, an alumnus of a District high school wrote to Superintendent Gibson, "If I were a student in the district, I could not attend my graduation if it was held in a Church.  I have corresponded with other students who feel similar to me."

123.  In 2006, another parent requested that the District's commencements be moved out of the Church because "non-Christian graduates feel uncomfortable participating in ceremonies conducted in such an environment."

124.  Other parents and community members have also objected to the District's church-graduation practice.

*Complaints From Civil-Liberties Groups*

125.  Likewise, several civil-liberties groups have advised the District that conducting public-school graduation ceremonies at Elmbrook Church is both unconstitutional and insensitive to persons of minority faiths.

126.  In November and December 2001, the Freedom From Religion Foundation expressed concerns about the constitutionality of the District's practice.

127.  In December 2001, the American Civil Liberties Union of Wisconsin publicly questioned the constitutionality of the church graduations.

128.  In May 2002, the Anti-Defamation League urged the District to move its 2002 ceremonies to a secular venue because "[i]t is patently unfair to compel non-believers . . . to attend graduation in a highly sectarian environment," and because this practice "violate[s] the Establishment Clause."

129.  In a 2006 email concerning conflicts between Brookfield Central's graduation date and athletic events for members of Brookfield Central teams, Brookfield Central's principal wrote, "No students should be forced to choose between participating in graduation or competing at state [athletic tournaments] . . . ."

130.  Yet neither he nor any other District or school official balked at forcing some parents and students to choose between missing graduation and attending a ceremony in an environment permeated by a religion to which they do not subscribe.

*Complaints From Plaintiffs' Counsel*

131.  On June 7, 2007, Americans United for Separation of Church and State — which is now counsel for the plaintiffs — wrote to the District, explaining in detail why the District's

graduation practice offends the First Amendment and asking that the District transfer its graduation ceremonies to secular venues.

132. Superintendent Gibson wrote back the same day, declining to move the 2007 graduations out of the Church, but indicating that he hoped to do so sometime in the future.

133. On February 11, 2009, Americans United once again wrote to the District, providing additional legal analysis about the unconstitutionality of the church graduations, and warning that litigation would ensue if the District did not agree to move its 2009 graduations to a secular venue.

134. On February 26, 2009, Superintendent Gibson wrote back, refusing to move the graduations from the Church.

135. Brookfield East's and Brookfield Central's graduations thus remain scheduled to take place at Elmbrook Church, on June 6 and 7, 2009, respectively.

136. Graduation rehearsals for both schools have been scheduled for June 4, 2009, also at Elmbrook Church.

*The District's Backup Plan*

137. Plaintiffs are informed and believe, however, that the District has reserved the Waukesha County Exposition Center for June 6 and 7, 2009, as a backup facility in case it has to move the graduation ceremonies as a result of this suit.

138. Each school's graduating classes have 300 to 350 students.

139. The Waukesha County Exposition Center seats 1750 people.

140. The Waukesha County Exposition Center can thus accommodate the graduation ceremonies.

### *Impact of the Church-Graduation Practice*

141.  High school graduations are once-in-a lifetime, deeply significant events for graduates and their families, including the plaintiffs.  But in light of the Christian iconography displayed throughout graduation exercises held at Elmbrook Church, these public-school events convey the strong impression not of secular high-school commencements, but rather of sectarian religious events.

142.  Holding graduations at Elmbrook Church has forced and/or threatens to force the plaintiffs to choose between entering an unwanted religious environment and missing their own or their family members' graduations.  The plaintiffs have been coerced or are threatened with coercion to enter a religious environment of a faith to which they do not subscribe as the price of attending a momentous rite of passage in their own or their family members' lives.  And plaintiffs who have children have suffered or are threatened with governmental interference in the upbringing of their children with respect to religion.

143.  The Christian environment of the Church during graduations that are sponsored and organized by a public entity sends the message that the District endorses the Christian religion and favors it over other faiths.  This message of religious endorsement is enhanced by the membership in Elmbrook Church of the District's superintendent, certain Board members, and other top District officials; by the District's refusal to move the graduations despite the receipt of multiple complaints from parents who expressed intense discomfort at being required to attend their children's commencements in the Church; by the existence of many appropriate alternative graduation sites that are secular; and by other aspects of the history of the District's church-graduation practice.

144.  The graduations at Elmbrook Church excessively entangle the District with religion.  The District has delegated a religious institution control over the physical setting of a public-school event.  And if the District asserts control over the Church's physical space to cleanse the Church of religious items and symbols for graduations, the District will only become even more entangled with religion, for the District will have to assess which items in the Church communicate a religious message and need to be veiled.

145.  The church graduations have led to divisiveness in Brookfield Central and Brookfield East associated with the site selection.  This divisiveness has been enhanced by the votes and meetings the District has held on the selection of a graduation site.  Students objecting to the use of Elmbrook Church for graduations have had to choose between expressing their opinions and potentially facing ridicule or ostracism as a consequence, or keeping their concerns private in order to fit in.

146.  Finally, the annual use of property taxes by the District to pay part of Elmbrook Church's fees for the graduations constitutes the use of public tax funds to support graduation ceremonies in a religious environment and to aid the propagation of the Church's religious views.

### Claim for Relief: Violation of the Establishment Clause
### of the First Amendment of the United States Constitution

147.  Paragraphs 1 through 146 above are incorporated as if fully set forth herein.

148.  The Establishment Clause of the U.S. Constitution's First Amendment provides that "Congress shall make no law respecting an establishment of religion."  This prohibition applies with full force and effect to the official acts of local governmental entities, including the Elmbrook School District and its officers and employees, through the Due Process Clause of the

U.S. Constitution's Fourteenth Amendment.

149. The Elmbrook School District's practice of holding commencement ceremonies for Brookfield Central and Brookfield East in a Christian church violates the Establishment Clause for a number of reasons, including those stated below.

150. The District's practice coerces students, parents, and others to enter a house of worship and coercively exposes them to unwanted religious symbols.

151. The District's practice communicates a message that the District endorses and favors the Christian religion and the particular beliefs of the Church.

152. The District's practice excessively entangles the government with religion, and leads to religious divisiveness in the District schools and community.

153. The District's practice causes taxpayer funds to support a religion-infused graduation ceremony and the propagation of the Church's religious views.

154. The District also violated the Establishment Clause by holding majoritarian votes on whether to have graduations in a house of worship.

155. By violating the Establishment Clause as set forth above, the District has injured plaintiffs Does 1 through 8, and threatens continued or future injury to plaintiffs Does 1 through 6 and Doe 9.

156. By violating the Establishment Clause as set forth above, the District has, under color of statutes, ordinances, regulations, policies, custom, or usage, deprived or threatened to deprive the plaintiffs of rights secured by the First and Fourteenth Amendments to the U.S. Constitution, entitling them to a remedy under 42 U.S.C. § 1983.

**Request for Relief**

157.  Paragraphs 1 through 156 above are incorporated as if fully set forth herein.

*Injunction*

158.  Plaintiffs respectfully request a preliminary injunction barring the District from conducting its June 6 and 7, 2009, commencement ceremonies, as well as the June 4 rehearsals therefor, in Elmbrook Church or in any other house of worship.  Plaintiffs further request a permanent injunction barring the District from conducting future commencement ceremonies for any District high school, as well as any other school event, in Elmbrook Church or in any other house of worship or religious venue.

159.  In the alternative, if the Court declines to grant the relief requested in the paragraph above, then the plaintiffs respectfully request (a) a preliminary injunction prohibiting the District from conducting its June 6 and 7 commencement ceremonies, as well as the June 4 rehearsals therefor, in Elmbrook Church or in any other house of worship unless all religious symbols visible to attendees, both on the venue's exterior and within, are covered or removed; and (b) a permanent injunction prohibiting the District from conducting commencement ceremonies for any District high school, as well as any other school event, in Elmbrook Church or in any other house of worship or religious venue unless all religious symbols visible to attendees, both on the venue's exterior and within, are covered or removed.

*Declaratory Judgment*

160.  An actual controversy exists between the parties as to whether the practice of holding high-school graduations in a house of worship violates the Establishment Clause. Plaintiffs respectfully request a declaratory judgment that this practice violates the U.S.

31

Constitution.  Plaintiffs further request a declaratory judgment that the District violated the constitutional rights of plaintiffs Does 1, 2, 3, 5, 6, 7, and 8 by holding graduations at Elmbrook Church; violated the constitutional rights of plaintiffs Does 2, 4, 5, and 6 by spending tax funds to support those graduations; and violated the constitutional rights of plaintiff Doe 7 by subjecting Doe 7 to a majoritarian vote on whether to have Doe 7's graduation at the Church.

### *Damages*

161.  Plaintiffs Does 1 to 3 and 5 through 8 seek an order awarding them compensatory damages, as according to proof, against the District for the mental anguish and emotional distress they suffered in connection with being coerced by the District to attend graduation ceremonies in a house of worship.  Plaintiff Doe 7 also seeks compensatory damages for the mental anguish and emotional distress Doe 7 suffered as a result of the District holding a majoritarian student vote on whether to hold Doe 7's graduation in a church.

162.  In the alternative, if they are not awarded compensatory damages, plaintiffs Does 1 through 3 and 5 through 8 seek an order awarding nominal damages of one dollar to each of those plaintiffs, against the District, for violating their constitutional rights by holding graduations in Elmbrook Church; and, in the case of Does 2, 4, 5, and 6, by using their property-tax payments to support such graduations; and further, in the case of Doe 7, by subjecting Doe 7 to a majoritarian vote on whether to hold Doe 7's graduation at the Church.

163.  Plaintiff Doe 4 seeks only nominal, and not compensatory, damages against the District, in the amount of one dollar, for violating Doe 4's constitutional rights by using Doe 4's property-tax payments to support graduations in a religious environment and the propagation of the Church's religious tenets.

### *Attorneys' Fees and Costs*

164.  Plaintiffs also request an order awarding them the costs of this action, including attorneys' fees, costs, and expenses, under 42 U.S.C. § 1988.

### *Other Relief*

165.  Plaintiffs additionally request such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Alex J. Luchenitser
Alex J. Luchenitser

Ayesha N. Khan (D.C. Bar No. 426836)
Alex J. Luchenitser (D.C. Bar No. 473393)
Elizabeth J. Stevens (D.C. Bar No. 974980)
AMERICANS UNITED FOR SEPARATION
  OF CHURCH AND STATE
518 C Street, NE
Washington, DC 20002
Tel: (202) 466-3234
Fax: (202) 466-2587
*khan@au.org* / *luchenitser@au.org* /
  *stevens@au.org*

James H. Hall, Jr. (Wis. Bar No. 1004338)
F. Thomas Olson (Wis. Bar No. 1010170)
HALL LEGAL, S.C.
759 North Milwaukee Street
Milwaukee, WI 53202
Tel: (414) 273-2001
Fax: (414) 273-2015
*jhh@hall-legal.com* / *folson@hall-legal.com*

*Attorneys for Plaintiffs*

Dated: April 20, 2009

33